FILED by ___ R B ___ D.C.

April 16, 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
## CIVIL DIVISION

UNITED STATES OF AMERICA
ex rel.
MICHAEL REILLY, M.D.,

**10-60590-Cv-Martinez/Brown**

Relator,

**TO BE FILED IN
CAMERA AND UNDER SEAL**
DO NOT PUT IN PRESS BOX

vs.

DO NOT ENTER ON PACER

NORTH BROWARD HOSPITAL
DISTRICT d/b/a BROWARD HEALTH,
BROWARD GENERAL MEDICAL CENTER,
AND JOHN DOES 1-100

Defendants.

## QUI TAM RELATOR'S COMPLAINT UNDER
## FEDERAL FALSE CLAIMS ACT

### Introduction

1.  Defendants North Broward Hospital District d/b/a Broward Health and Broward General Medical Center (sometimes referred to collectively as "Broward Health" or "the Broward Health Defendants") have given physicians excessive salaries which are not commercially reasonable and which are based on the volume and value of inpatient and outpatient referrals by such physicians to Broward Health hospitals and clinics. In providing such financial incentives for



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### CIVIL DIVISION

 Sealed

UNITED STATES OF AMERICA
ex rel.
MICHAEL REILLY, M.D.,

Relator,

**TO BE FILED IN**
**CAMERA AND UNDER SEAL**
DO NOT PUT IN PRESS BOX

vs.

DO NOT ENTER ON PACER

NORTH BROWARD HOSPITAL
DISTRICT d/b/a BROWARD HEALTH,
BROWARD GENERAL MEDICAL CENTER,
AND JOHN DOES 1-100

Defendants.

## QUI TAM RELATOR'S COMPLAINT UNDER
## FEDERAL FALSE CLAIMS ACT

### Introduction

1.      Defendants North Broward Hospital District d/b/a Broward Health and Broward General Medical Center (sometimes referred to collectively as "Broward Health" or "the Broward Health Defendants") have given physicians excessive salaries which are not commercially reasonable and which are based on the volume and value of inpatient and outpatient referrals by such physicians to Broward Health hospitals and clinics. In providing such financial incentives for

SCANNED

referrals from employee physicians, Defendants have violated Federal Stark and Anti-kickback laws discussed below. Defendants have knowingly submitted thousands of false claims to the Medicare and Medicaid Programs which claims were induced or tainted by referrals from physicians receiving excessive salaries from Broward Health.

2.     Defendants' knowing submission of false claims for payment constitutes a violation of the federal False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA" or "Act").  Defendants have caused the United States to sustain a loss of funds and damage to its interests.

3.     The FCA was amended pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 (FERA), enacted May 20, 2009. "The amendments made by this section shall take effect on the date of enactment of the Act and shall apply to conduct on or after the date of enactment, except that (1) subparagraph (B) of section 3729 (a) (1), as added by subsection (a) (1) shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. § 3729) that are pending on or after date…" FERA, § 4(f). The conduct in this Complaint occurred both before and after the enactment of FERA. Based upon information and belief, the illegal conduct identified in this Complaint at Broward Health is ongoing and continues through the present.  This Complaint will predominantly reference pre-FERA numbering for paragraphs 3729(a) of the

FCA with the limited exception of referencing the post-FERA numbering, pursuant to § 4(f) for conduct on or after June 7, 2008 when Defendants "knowingly make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim…" 31 U.S.C. § 3729 (a) (1) (B).

4.    Under the pre-FERA and post-FERA Federal False Claims Act, "'knowing' and 'knowingly' mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. 3729 (b).

5.    In considering the requisite scienter which subjects a defendant to liability under the Federal False Claims Act, "no proof of specific intent to defraud is required." Under the Federal False Claims Acts, a defendant is liable for acting in "reckless disregard of the truth or falsity of the information" or acting in "deliberate ignorance of the truth or falsity of the information."

6.    Based on the Federal False Claims Act, on behalf of the United States, Dr. Reilly seeks to recover all available damages, civil penalties, and other relief arising from the Broward Health Defendants' conduct described in this Complaint.

7.    All of the Defendants who engaged in the violations of federal laws at

issue are not presently known by Dr. Reilly, and the precise amount of the loss to the federal government cannot presently be determined by Dr. Reilly.

## PARTIES

8.     Relator Michael Reilly, M.D., is a resident of Fort Lauderdale, Florida. He is an orthopedic surgeon who has held staff privileges to practice medicine at Imperial Point Medical Center, a hospital within the Broward Health system since 1989. He formerly held staff privileges at two other Broward Health hospitals, Broward General and North Broward.   Through his work, medical practice, research, and investigation into physician compensation paid by Broward Health, he has gained direct, personal and independent knowledge that Defendants have violated federal Stark and anti-kickback laws in compensating physicians based on the volume and value of inpatient and outpatient referrals.

9.     Defendant North Broward Hospital District d/b/a Broward Health comprises a "nonprofit" health care system which encompasses more than 30 healthcare facilities including Broward General Medical Center, North Broward Medical Center, Imperial Point Medical Center, Coral Springs Medical Center, and Broward Health Weston.

10.     Defendant Broward General Medical Center is the largest of the Broward Health hospitals and the primary place of practice for physicians receiving excessive salaries described in this Complaint.

11.   The headquarters of Broward Health are located at 303 SE 17th Street Fort Lauderdale, FL 33316.

12.   The identities of the remaining Doe defendants who knowingly submitted or caused the submission of false claims to the United States are presently unknown to Dr. Reilly.  All listed Defendants and such additional Doe defendants may have served as contractors, agents, partners, and/or representatives of one and another in the submission of false claims to the United States were acting within the course, scope and authority of such contract, agency, partnership and/or representation for the conduct described herein.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

14.   Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a), as Defendants can be found, reside, transact business, or otherwise engaged in the illegal  conduct at issue within the District.

15.   This action arises under the provisions of Title 31 U.S.C. § 3729, *et seq,* popularly known as the False Claims Act which provides that the United

States District Courts shall have exclusive jurisdiction of actions brought under that Act.

16.    Section 3732(a) of the Federal False Claims Act provides, "Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

17.    This Complaint is not based in any way upon the public disclosure of any allegations of fraud or transactions in any criminal, civil, or administrative hearing or any congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media.

18.    Dr. Reilly has complied with 31 U.S.C. §3730(b) (2) by serving a copy of the Complaint and written disclosure of substantially all the material evidence and information in his possession upon the United States Attorney for the Southern District of Florida and the United States Attorney General. Dr. Reilly also provided notice to the federal government prior to filing the Complaint under seal with the Court.

## INTRODUCTION TO LAVISH PHYSICIAN SALARIES PAID BY BROWARD HEALTH

19.    Enacted to prevent abuse of the Medicare program, Section 1877 of the Social Security Act ("the Stark Law") generally prohibits physician referrals of Medicare and Medicaid patients to health service providers with which the physician has an existing financial relationship. 42 U.S.C. § 1395nn (2000). One notable statutory exception to the Stark Law prohibition permits referrals if the physician and provider have a "bona fide employment relationship" or a "personal service arrangement" in which the physician is being compensated at the "fair market value" in a manner that does not take into account "the volume or value of any referrals." 42 U.S.C.S. §§ 1395nn (e) (2), (3).  Federal law prohibits physician salaries which "take[] into account (directly or indirectly) the volume or value of any referrals by the referring physician." Additionally, the remuneration must be "commercially reasonable even if no referrals were made to the employer." 42 U.S.C.S. §§ 1395nn (e) (2), (3). The Stark Law defines "fair market value" as "the value in arms length transactions, consistent with the general market value." 42 U.S.C.S. § 1395nn (h) (3). The Broward Health Defendants have repeatedly violated these federal laws.

20.    In essence, the Stark law includes an exception for employed physicians, but the exception requires that the compensation is fair market

value, commercially reasonable, and does not take into account the volume and value of referrals. The Broward Health Defendants have repeatedly violated such laws by awarding lavish employment contracts to physicians with salaries far exceeding fair market value. Broward Health's own internal financial analyses of physician revenues and expenses confirm that such salaries contemplate the value and volume of inpatient and outpatient referrals to Broward Health hospitals and clinics.

21.    The excessive physician salaries awarded by the Broward Health Defendants cross multiple medical specialties.

22.    In cardiology, the Broward Health Defendants paid cardiologist Dr. Michael Chisner at least $1,161,953.12 in 2008 and $1,158,360.76 in 2009, despite the fact that the 90th percentile salary for invasive cardiologists in the Southeast was $800,040 in 2008 and the 90th percentile for noninvasive cardiologists in the Southeast was $850,744 in 2008.[1]

23.    The Broward Health Defendants have performed extensive financial analysis of the expenses and revenues generated by each physician, including the value and volume of inpatient and outpatient referrals generated by each physician to Broward Health hospitals and clinics. In June of 2009, the Broward Health

---

[1]  The percentiles quoted in this Complaint are compiled and published by the Medical Group Management Association which is the leading national survey of physician compensation widely recognized and used in the health care industry.

Defendants performed such an analysis of Dr. Chizner which showed that in evaluating the net revenue and expenses of his personal practice, Broward Health faced a net loss of $750,495. Dr. Chizner's "net operating revenue" as determined by Broward Health was $390,871 as of June in Fiscal Year 2009. However, "expenses" from his practice, including his salary, totaled $1,327,443 as of June. As Broward Health tracked and monitored "inpatient contribution margins" and "outpatient contribution margins" related to Dr. Chizner, the total contribution margin was a profit of $78,781. Broward Health has paid Dr. Chizner a salary which far exceeds the 90th percentile of physician compensation and which Broward Health itself has agreed to pay by tracking and monitoring inpatient and outpatient revenues to Broward Health generated by referrals from Dr. Chizner's practice. Such compensation based on the value and volume of patient referrals violates Federal Stark and anti-kickback laws.

24.     Broward Health paid cardiologist Dr. Violet Atanasoski least $1,003,208.40 in 2008 and $1,020,119.20 in 2009, despite the fact that the 90th percentile salary (the highest percentile category) for invasive cardiologists in the Southern United States was $800,040 in 2008 and the 90th percentile compensation for noninvasive cardiologists in the Southern U.S. was $850,744 in 2008.

25.     Broward Health paid cardiologist Dr. Ashok Sharma at least $1,084,178.40 in 2008 and $1,038,575.80 in 2009, despite the fact that the 90th

percentile (the highest percentile category) compensation for noninvasive cardiologists in the Southern U.S. was $850,744 in 2008.

26.    Broward Health has performed ongoing extensive financial analysis of the expenses and revenues generated by Dr. Sharma, including the value and volume of inpatient referrals and outpatient referrals to Broward Health. In June of 2009, Broward Health performed such an analysis of Dr. Sharma which showed that in evaluating the net revenue and expenses of his personal practice, Broward Health faced a net loss of $701,222. Dr. Sharma's "net operating revenue" as determined by Broward Health was $1,459,419 as of June in Fiscal Year 2009. However, "expenses" from his practice, including his salary, totaled $2,160,641 as of June. As Broward Health tracked and evaluated "inpatient contribution margins" and "outpatient contribution margins" related to Dr. Sharma, the total contribution margin was a net loss of $320,518 instead of $701,222. Broward Health has paid Dr. Sharma a salary which far exceeds the 90th percentile of physician compensation and which Broward Health has agreed to pay by tracking and monitoring the inpatient and outpatient revenues to Broward Health generated by referrals from Dr. Sharma's practice.   Such compensation based on the value and volume of patient referrals violates Federal Stark and anti-kickback laws.

27.    Broward Health paid orthopedic surgeon Erol Yoldas at least

$1,391,184.23 in 2008 and $1,557,984.40 in 2009, despite the fact that the 90th percentile (the highest percentile category) salary for orthopedic surgery-sports medicine in the Southern U.S. was $1,209,569 in 2008.

28.    Broward Health has performed extensive financial analysis of the expenses and revenues generated by Dr. Yoldas, including the value and volume of inpatient referrals generated by Dr. Yoldas to Broward Health. In June of 2009, Broward Health performed such an analysis of Dr. Yoldas which showed that in evaluating the net revenue and expenses of his personal practice, Broward Health faced a net loss of $791,630. Dr. Yoldas' "net operating revenue" as determined by Broward Health was $1,296,484 as of June in Fiscal Year 2009. However, "expenses" from his practice, including his salary, totaled $2,088,114 as of June. As Broward Health tracked and monitored "inpatient contribution margins" and "outpatient contribution margins" related to Dr. Yoldas, the total contribution margin was a profit of $867,326. Broward Health has paid Dr. Yoldas a salary which far exceeds the 90th percentile of physician compensation and which Broward Health agreed to pay Dr. Yoldas by tracking and monitoring the inpatient and outpatient revenues for Broward Health generated by referrals from Dr. Yoldas' practice.  Such compensation based on the value and volume of patient referrals violates Federal Stark and anti-kickback laws.

29.    Broward Health paid orthopedic surgeon George Caldwell at least

11

$1,373,304.73 in 2008 and $1,424,356.85 in 2009, despite the fact that the 90th percentile salary for orthopedic surgery-sports medicine in the Southern United States was $1,209,569 in 2008.

30.    Broward Health has performed extensive financial analysis of the expenses and revenues generated by Dr. Caldwell, including the value and volume of inpatient and outpatient referrals to Broward Health. In June of 2009, Broward Health performed such an analysis of Dr. Caldwell which showed that in evaluating the net revenue and expenses of his personal practice, Broward Health faced a net loss of $814,007. However, when Broward Health evaluated "inpatient contribution margins" and "outpatient contribution margins" related to Dr. Caldwell, the total contribution margin was a profit of $38,521. Broward Health has paid Dr. Caldwell a salary which far exceeds the 90th percentile of physician compensation and which Broward Health agreed to pay by tracking and monitoring the inpatient and outpatient referrals and revenues to Broward Health generated by referrals from Dr. Caldwell's practice.  Such compensation based on the value and volume of patient referrals violates Federal Stark and anti-kickback laws.

31.    Based on information and belief, Dr. Reilly believes that the illegal conduct and violations of Federal Stark and anti-kickback laws identified in this Complaint have continued into 2010 and are ongoing at Broward Health.

## INTRODUCTION TO MEDICARE AND MEDICAID

32.   In 1965, Congress enacted Title XVIII of the Social Security Act ("Medicare") to pay for the cost of certain medical services for persons aged 65 years or older and those with disabilities.

33.   The Medicaid program is a cooperative Federal-State program established in 1965 for the purpose of providing Federal financial participation (FFP) to States that choose to reimburse certain costs of medical treatment for needy persons. Medicaid is authorized under title XIX of the Social Security Act, and is administered by each State in compliance with Federal requirements specified in the Medicaid statute and regulations.

34.   Medicare is divided into four parts.  Of relevance here, Medicare Part A pays for care in a hospital, skilled nursing facility, some home health care, and hospice care.  Part B covers partial payment for physicians' services, services and supplies incident to physicians' services, outpatient hospital services, drugs and biologicals that cannot be self-administered, physician assistant, nurse practitioner, and clinical nurse specialist services, and other medical services not covered by Part A.

35.   The Anti-Kickback Statute was enacted in 1972 to protect federal health care programs and their patients from fraud and abuse.  The law provides that anyone who knowingly and willfully receives or pays anything of value to

13

influence a referral under a Federal health care program shall be guilty of a felony and upon conviction, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.   Specifically, it is a felony to knowingly and willfully

> "offer[] or pay[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person--(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program."

> *See* 42 U.S.C. 1230a-7b (b).

36.   In 1987, Congress authorized regulations designating specific "safe harbors" for several business transactions that would be considered legal.   The Anti-Kickback safe harbor provisions, 42 U.S.C. § 1320a-7b (b) and 42 C.F.R. § 1001.952, govern anyone engaging in business with a federal health care program. The safe harbor provisions provide clear requirements for transactions that do not violate the law if the requirements are met.

37.   After a violation of each element of the Anti-Kickback Statute has been shown by the Government, the burden shifts to the defendant to establish that their conduct fell within a safe harbor or exception.   The Government is not

responsible for determining whether the Defendants' conduct was protected by a safe harbor or exception.

## The Stark Statute and Its General Exceptions

38.     Enacted to prevent abuse of the Medicare program, Section 1877 of the Social Security Act ("the Stark Law") generally prohibits physician referrals of Medicare and Medicaid patients to health service providers with which the physician has an existing financial relationship. 42 U.S.C.S. § 1395nn (2000). One notable statutory exception to the Stark Law prohibition permits referrals if the physician and provider have a "bona fide employment relationship" or a "personal service arrangement" in which the physician is being compensated at the "fair market value" in a manner that does not take into account "the volume or value of any referrals." 42 U.S.C.S. §§ 1395nn (e) (2), (3). The Stark Law defines "fair market value" as "the value in arms length transactions, consistent with the general market value." 42 U.S.C. § 1395nn (h) (3).

39.     The Stark Statute, 42 U.S.C. § 1395nn, prohibits a hospital from submitting Medicare and Medicaid claims based on patient referrals from physicians having a prohibited "financial relationship" with the hospital.  As defined by the statute, a financial relationship is any compensation paid directly or indirectly to a referring physician or any ownership or investment interest,

including debt.  42 U.S.C. § 1395nn (a) (2).  The statute provides that if a physician has a financial relationship with the entity, then:

> "(A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and

> (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under sub paragraph (A)."

> 42 U.S.C. §1395nn (a) (1).

40.    The Stark Statute was enacted in two parts, referred to as Stark I and Stark II. Stark I, enacted in 1989, covered referrals of Medicare patients for clinical laboratory services made on or after January 1, 1992 by physicians with a prohibited financial relationship with the lab provider.  *See* Omnibus Budget Reconciliation Act of 1989, P.L. 101-239, § 6204.  In 1993 and 1994, Stark II was introduced to include ten additional designated health services for which prohibited referrals were made unlawful (physical therapy services, occupational therapy services, radiology or other diagnostic services, radiation therapy services, durable medical equipment, parenteral and enteral nutrients, equipment, and supplies, prosthetics, orthotics, and prosthetic devices, home health services, outpatient prescription drugs and inpatient and outpatient hospital services).  *See* Omnibus Budget Reconciliation Act of 1993, P.L. 103-66, § 13562.  Stark II became

16

effective on January 1, 1995.

41.    Under the terms of the statute, the United States can not pay for services ordered by physicians or hospitals when such improper relationships exist. 42 U.S.C. § 1395nn (g) (1).    Further, violation of the statute may result in exclusion from participation in federal healthcare programs.  42 U.S.C. §§ 1395nn (g) (3), 1320a-7a (a).

42.    Similar to the safe harbor provisions of the Anti-Kickback law, the Stark Statute also contains general exceptions to certain arrangements or transactions which would otherwise have been prohibited under the statute.  42 U.S.C. § 1395nn (b).

43.    Defendants have expressly certified compliance with the law, including the Anti-Kickback law and the Stark Statute, on its annual cost reports. Each cost report states, "If services identified in this report were provided or procured through the payment directly or indirectly of a kickback or where otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result." (Emphasis added).  The cost report certification was signed by an officer or administrator of Broward Health, who certified "that I am familiar with the laws and regulations regarding the provision of health care services and that the services identified in this cost report were provided in compliance with such laws and regulations."  The certifications are a prerequisite

to payment under the Medicare and Medicaid Programs. Broward Health's express certifications were and continue to be knowingly false for the reasons set forth in this Complaint.

44.     Defendants have also violated the federal False Claims Act through their false implied certifications with the Anti-Kickback law and Stark Statute, which certifications are prerequisites to Defendants' receipt of Medicare and Medicaid payments. Form CMS-855A, the enrollment application that providers must execute to participate in the Medicare program, contains the following certification:

> "I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including but not limited to, the Federal anti- kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare." (Emphasis added).

45.     After violating the federal Stark and anti-kickback laws, Defendants violated the federal False Claims Act through its knowingly false express and implied certifications which were conditions of payment from Federal health care programs, including Medicare and Medicaid.

46.     One element of damages to the United States may be calculated by

analyzing all amounts paid by an Federal health care program, including Medicare and Medicaid, to any Broward Health hospital or clinic arising from any care or treatment of patients being followed by physicians who have received such excessive salaries from Defendants. Such amounts paid by all Federal health care programs to Broward Health hospitals or clinics are tainted by the illegal physician salaries at issue which violate federal Stark and anti-kickback laws. Additionally, Defendants' certification of compliance with federal Stark and anti-kickback laws was an express condition of all payments made by any federal health care program, including Medicare and Medicaid. Thus, Defendants' false certification of compliance with federal Stark and anti-kickback laws triggered every payment made by any Federal health care program for the years in which Broward Health was knowingly paying excessive salaries to physicians based on the value and volume of inpatient and outpatient referrals by such physicians to Broward Health hospitals and clinics.

## Count I
## Federal False Claims Act 31 U.S.C. §§ 3729(a) (1) and (a) (2)

47.    Relator repeats and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

48.    This is a claim for treble damages and penalties under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

49.    Through the acts described above, the Broward Health Defendants

knowingly presented or caused to be presented, false claims to officers, employees or agents of the United States Government, within the meaning of 31 U.S.C. § 3729(a)(1).

50.   Through the acts described above, the Broward Health Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to get false claims paid or approved, within the meaning of 31 U.S.C. § 3729(a)(2).

51.   The United States unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants, paid and continues to pay claims that would not be paid but for Defendants' unlawful conduct.

52.   As a result of the Broward Health Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

53.   Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

## Count II
## Federal False Claims Act 31 U.S.C. § 3729(a) (3)

54.   Relator repeats and realleges each allegation contained in the paragraphs above as though fully set forth herein.

55.   This is a claim for penalties and treble damages under the False

Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

56.    Through the acts described above, the Broward Health Defendants, acting in concert with each other and other contractors, agents, partners, and/or representatives, conspired to knowingly present or cause to be presented, false claims to the United States and knowingly made, used, or caused to be made or used, false records and statements, and omitting material facts, to get false claims paid or approved.

57.    As a result, the United States, unaware of the false claims caused by Defendants, paid and continues to pay claims that would not be paid but for Defendants' unlawful conduct.

58.    By reason of the Broward Health Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

59.    Additionally, the United States is entitled to the maximum penalty of $11,000 for each false claim allowed or paid through the Defendants' conspiracy to submit and obtain payment for false claims to the United States.

## **PRAYERS FOR RELIEF**

On behalf of the United States, Dr. Reilly requests and prays that judgment be entered against Defendants in the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, for a qui tam

relator's share as specified by 31 U.S.C. §3730, for attorneys fees, costs and expenses as provided by 31 U.S.C. §3730, and for all such further legal and equitable relief as may be just and proper.

**JURY TRIAL IS HEREBY DEMANDED.**

Respectfully submitted, this the 16 day of April, 2010.

Theodore J. Leopold (FBN 705608)
Leopold~Kuvin, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
561-935-4801 – Telephone
561-515-1401 – Fax
tleopold@leopoldkuvin.com


Bryan A. Vroon, Esq. (Pro Hac Admission
Motion to be filed)
Georgia Bar No. 729086
Law Offices of Bryan A. Vroon, LLC
1718 Peachtree Street, Suite 1088
Atlanta, Georgia  30309
Telephone: (404) 607-6712
Facsimile:  (404) 607-6711
bvroon@vroonlaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing Qui Tam Relator's Complaint Under 31 U.S.C. §3729, Federal False Claims Act by depositing a true and correct copy of same by Certified Mail in the United States Mail, postage prepaid, addressed as follows:

> Attorney General Eric H. Holder
> Attorney General of the United States
> 5111 Main Justice Building
> 10th & Constitution Avenue, N.W.
> Washington, D.C.  20210

> Jeffrey H. Sloman, Esq.
> Acting United States Attorney
> for the Southern District of Florida
> 99 NE 4th Street
> Miami Florida
> 33132

This ___16___ day of April 2010.

THEODORE J. LEOPOLD

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America, ex rel. Michael Reilly, MD | North Broward Hospital District d/b/a Broward Health, Broward General Medical Center, & John Does 1-100 |

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Leopold~Kuvin, P.A., 2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410, 561-515-1400

Attorneys (If Known)

(d) Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ✔ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

☒ 890 Other Statutory Actions

**V. ORIGIN** (Place an "X" in One Box Only)

✔ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

**VI. RELATED RE-FILED CASE(S).**
(See instructions second page)

a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE _____    DOCKET NUMBER _____

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

31 U.S.C. Section 3730(b)(2), Federal False Claims Act

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ✔ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
April 16, 2010

FOR OFFICE USE ONLY

AMOUNT _____    RECEIPT # _____    IFP _____